FRANCIS FISHER & others *vs.* GILMAN CURRIER.

Since the state insolvent law went again into operation by the repeal of the United States bankrupt act of 1841, the creditors of one who was decreed a bankrupt under that act, but whose discharge was refused by the court of the United States, may prove their debts against his estate under that insolvent law.   And if they so prove their debts, it seems that they will be barred by his discharge under that law.   But such discharge will not bar those creditors whose claims arose before the debtor was decreed a bankrupt, unless they voluntarily prove them according to the provisions of the insolvent law.

THIS was a petition, praying that further proceedings on the application of Gilman Currier for the benefit of the insolvent law might be stayed, and that the proceedings already had thereon might be reversed and annulled.

The petitioners alleged that they were creditors of said Currier and Hambleton E. Smith, partners, doing business in Boston

under the firm of Currier & Smith, who were declared bankrupts, under the United States bankrupt act of 1841, by a decree of the district court of the United States for the district of Massachu setts, on the 17th of June 1842, upon a petition for that purpose duly filed by certain of their creditors: That said Currier, on the 14th of March 1843, filed his petition in said district court, praying for a full discharge from all his debts proveable under the said bankruptcy, and a certificate thereof to be granted, according to said bankrupt act: That a majority in number and value of his creditors filed objections to his discharge ; and that afterwards, on the 30th of January 1844, leave was granted to him, by said court, to discontinue his said petition for a discharge : That said Currier had since applied for the benefit of the insolvent law of this Commonwealth, by a petition to a master in chancery, and had not, in and by said petition, restricted his application to a discharge from debts contracted subsequently to the aforesaid decree in bankruptcy ; and that the said master in chancery had issued his warrant to a messenger to take possession of the estate of said Currier, and to call a meeting of his creditors, for the proof of debts and choice of an assignee.

The petitioners further stated, in their petition, that the proceedings upon which said Currier was declared bankrupt, as aforesaid, were still pending before said district court.

The statements made by the petitioners were admitted by the respondent, and the case was argued on those statements.

*W. Gray*, for the petitioners.

*A. H. Fiske*, for the respondent.

The opinion of the court was delivered March 31st 1845.

SHAW, C. J. This is another important question upon the construction of the insolvent law. Ever since the repeal of the bankrupt law of the United States, and the consequent revival of the insolvent law of the Commonwealth, it has been made a question, whether a person, who had been declared a bankrupt, and who had not obtained his discharge, could proceed and take the benefit of the insolvent law, and obtain a discharge from his debts, in the usual course of proceedings. On the one hand, it is argued, that the insolvent law is explicit and imperative, and

provides that a debtor may apply, &c. ; and upon certain facts being shown, the judge or master in chancery shall proceed to grant a warrant, upon which the proceedings required, in regard to proof of debts, grant of a discharge, &c. will follow in due course. It is also urged, with great plausibility, that as the case supposes a debtor whose property is open to attachment by the usual process of law, it would be to defeat one of the obvious objects of the policy of the insolvent law, to hold that it could not be brought under the administration of that system of insolvency, which may insure an equal distribution among all creditors, when there is not property sufficient to pay the whole. Besides, it may be asked, (and the question demands an answer,) if he cannot be brought within the operation of the insolvent law, soon after his discharge under the bankrupt law has been refused, how long shall he be thus incapable ? Shall it be one, or two, or more years, or shall he never again be subject to the operation of a system of laws supposed to be founded on considerations of equity and sound policy, in respect to all parties, and to the interests of the community ?

On the other hand, it has been argued with great force, that to permit one, who has been declared a bankrupt under the law of the United States, all of whose property has gone into the hands of an assignee, and who has been refused a discharge under that law, on account of fraud, or some cause which must be presumed to be good and sufficient, to apply voluntarily to a magistrate of the State, acting under another law, when perhaps he has little or no property to offer, and obtain a discharge from those very debts which existed against him as a bankrupt, would be manifestly unjust, and contrary to the spirit, if not the terms, of the insolvent law.

This is an instance, where, in consequence of two distinct systems of law, operating at the same time upon the citizens of the United States, it is necessary, by a cautious discrimination, to prevent a conflict between them, and to give to each its full, just and proper effect and operation, and no more. The law of the United States does not act directly on that of the State, to repeal or modify it ; nor can the law of the State directly affect the law of the United States ; but both act upon the citizens, and deeply

affect their rights; and it is only when they come immediately into opposition and conflict with each other, that the law of the State must yield to that of the United States, as the supreme law of the land. In the case stated, it appears to us that both can stand together, and each, in its proper sphere, have its proper effect and operation.

1. We take it to be settled, that the property of a bankrupt, which passes to his assignee, under the commission, is all the real and personal property, and all the rights of property vested in him at the time of the decree declaring him a bankrupt, and that after acquired property does not go to the assignee. *Ex parte Newhall*, 5 Law Reporter, 306, and 2 Story R. 360. We take it also to be settled, as the construction of the bankrupt law of the United States, that all debts of the bankrupt, existing at the time of the decree, whether then due and payable or not, are proveable under the commission, and will be barred by the certificate. *Downer v. Brackett*, 5 Law Reporter, 392.

Assuming then that a person, who has been declared a bankrupt under the law of the United States, but who has not obtained his discharge, or whose discharge has been denied by the competent tribunal, may have property which does not go to the assignee, and who owes debts not proveable under the commission, he is then within the terms of the insolvent laws of the Commonwealth; he owes debts which he is unable to pay in full, and he may have a considerable amount of property, acquired by bequest or by descent, or even by his own earnings, which is not exempted from attachment, or seizure on execution, by the ordinary process of law. Such a case seems also to be equally within the spirit and policy of the insolvent laws. It is for the general interest of his creditors that his property should be equally distributed, instead of being seized and appropriated by legal process to the satisfaction of some particular creditor, to the exclusion of all others; and it is for the interest of the debtor, upon the surrender of all his property, to obtain his discharge.

2. Such being the provisions and the policy of the insolvent laws, the question is, whether these proceedings can be commenced and prosecuted to their termination, without interfering

with the law of the United States.   To determine this, it is proper to trace these proceedings through, and see what the result would be.

The constitution of the United States having vested in con gress the power to establish uniform laws on the subject of bankruptcies, such laws must extend to all the rights, duties and obligations, incident to a state and condition of bank- ruptcy ; and, amongst other things, to provide when, how, on what terms, and to what extent, a bankrupt shall be discharged from his debts.   Such laws, when made, are declared, by another clause in the constitution, to be the supreme law of the land, and of course they supersede all state legislation on the same subject.   The bankrupt law of 1841 has provided when, on what terms, and with what effect, such a discharge shall be granted, and has invested the courts of the United States with authority to adjudge and determine, in each particular case, whether the bankrupt is within its provisions, and whether he is entitled to his discharge, and to grant or withhold it ac- cordingly.   It follows then, that, as to all debts which would come within the purview of such discharge — that is, as to all debts proveable under the commission, whether actually proved or not — the courts of the United States have exclusive jurisdiction to decide judicially whether they shall be discharged or not; and hav ing jurisdiction of the whole subject, their adjudication is equally conclusive, when it denies or withholds a discharge, as when it grants one.   We are therefore of opinion, that, as to the debts existing and proveable under the commission of bankruptcy, the power of discharging them *in invitum,* and against the will of the creditor, being exclusively in the courts of the United States, and these courts having exercised the power, and adjudged that they shall not be discharged, such judgment  protects the cred- itor against any discharge of the same debts, by operation of the law of the State.

3. Supposing then such creditors cannot, against their own consent, be barred of their debts by a discharge under the insol- vent laws, then the question is, whether they may, at their own option, come in and prove their debts, and take a dividend

Fisher & others *v.* Currier.

*pari passu* with those creditors whose debts accrued afterwards. And we are of opinion that they may. Their exemption from the compulsory operation of the insolvent law is a privilege, which they may waive, if they choose so to do. The case supposes that the discharge under the bankrupt law has been refused, and therefore the demands of the creditors are in full force, and may be enforced by arrest, attachment, or any other process of law. The very property which comes under the operation of the insolvent law, if accessible, might be attached by these creditors, who would thereby obtain a priority, as well against subsequent creditors as all others. The debtor certainly cannot object, because he is liable, in all respects, for the payment of the debt. And those who have become creditors since the bankruptcy cannot object on any better grounds. The prior debt of the bankrupt existed when they gave him credit, and they could place themselves on no higher ground, as against the person or the effects of the debtor, than that of a then existing creditor. But further; the principle of equity, on which the property of a bankrupt or insolvent debtor, either deceased or living, is distributed, is this; where two or more persons have equal claims upon a commo'n fund, insufficient to satisfy them all, equity requires that they shall share it *pro ratâ*. This principle is fully applicable to the case. Those who were creditors at the time of the bankruptcy have equal claims, with the subsequent creditors, upon the property of the debtor; and therefore, when it is insufficient to pay them all, have an equitable right to an equal distributive share with them.

4. If such creditors do come in and prove their debts, thereby waiving their exemption, we are strongly inclined to think that they will be bound by the discharge. They voluntarily submit themselves and their claims to the jurisdiction of the laws of the State, and it would seem, therefore, that upon principle, if they take the benefit, they shall take it with the corresponding burden, which the same law that gives it imposes. It seems in this respect to fall within the principle which has been applied to the case of fiduciary debts under the bankrupt law. There has been some conflict of opinion among judges on this point,

out we consider it as now settled, that creditors having fiduciary debts are not bound to come in under the commission, and, without their own consent, are not barred by the discharge ; but that they may come in and prove, and receive a dividend, if they choose ; and if they do, they are barred by the discharge. *Chapman* v. *Forsyth,* 2 Howard, 202. [See *Morse* v. *City of Lowell, ante,* 152.]

The court are therefore of opinion, that notwithstanding a person has been declared a bankrupt under the law of the United States, and his estate is yet in many respects unsettled, if he can bring himself within the provisions of the insolvent law, he may apply to a judge of probate or master in chancery for proceedings under that law, whether his discharge under the bankrupt law may have been granted or denied. If granted, of course all debts proveable under it are extinguished, and cannot be proved under the insolvent law, or be treated in any other way as existing debts. And as all the property which the bankrupt had, at the time he was decreed a bankrupt, vested in the assignee, the discharged bankrupt is to be regarded by the law as if such property or debts had never existed.

If the discharge has been refused by the court of the United States, then those who were creditors under the commission of bankruptcy will not be barred by the discharge under the insolvent law, if they do not prove their debts and take their dividends, which they may do. Whether, if they do, they will be barred by the discharge, if obtained, has not yet been settled.

These principles, we think, are sufficient to dispose of the present case. We are of opinion, for the reasons already given, that the proceedings before the master were not erroneous, but that, as far as they have proceeded, they are regular, and warranted by the statute. It is also obvious, that the interposition of this court, as prayed for, is not necessary to the relief of these complainants ; because no discharge or other proceedings under the insolvent law can bar their claims, or affect their rights, unless they voluntarily come in and become parties to them. At the same time it must be understood, from the principles herein stated, that if the proceedings under the insol-

vent law go on, and a discharge is obtained by the debtor, it will discharge those debts only which he has contracted since he was decreed a bankrupt, unless his other creditors prove their debts under these proceedings.

*Petition dismissed.*